George H. EDWARDS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18256.

United States Court of Appeals Eighth Circuit.

June 17, 1966.

Harold G. Johnson, Overland, Mo. (Court-appointed), for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee. Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant George H. Edwards was tried to and found guilty by a jury on a charge of depredation against property of an agency of the United States causing damage exceeding $100 in violation of 18 U.S.C.A. § 1361. His motion for new trial was overruled. He was sentenced to forty-two months imprisonment by final judgment entered September 3, 1965. This is a timely appeal authorized in forma pauperis from such conviction.

Defendant asserts that he is entitled to a reversal for the following reasons:

1. Error in denying his motion for new trial on the ground of newly discovered evidence.

2. Failure to instruct the jury to disregard the testimony of Turner and to draw no inferences from Turner's claiming a right not to testify based on the Fifth Amendment immunity.

The issue of the sufficiency of the evidence to support conviction is not raised. No exceptions were taken to any instructions nor were any instructions requested. No errors are asserted with respect to the admission or exclusion of evidence.

■ Our examination of the record satisfies us that substantial evidentiary support exists for the guilty verdict. It appears without dispute that defendant and Turner removed a medicine cabinet, a face bowl and some lead pipe from a vacant home in St. Louis owned by the Veterans Administration, an agency of the United States, and that damage in excess of $100 was caused thereby. A sign advising that the property belonged to the government was placed in a window so as to be clearly visible to one entering the front door. Defendant stated he entered by means of the front door.

Defendant as a witness in his own behalf admitted that he did on May 19, 1965, participate in carrying out the fixtures above described. He testified that such articles when first seen by him were detached and lying on the floor wrapped in paper; that he made the trip to the

house at the request of Turner and that he furnished his car for that purpose. Turner furnished the gasoline and offered to share the profits of the sale of the junk with the defendant. Defendant's testimony is to the effect that he acted without any criminal intent in the belief that Turner had rightfully acquired the items which were removed. Defendant denied any participation in tearing out the fixtures or any knowledge thereof.

A neighbor boy observed defendant and Turner enter and leave the building and saw Turner take a hacksaw into the building with him. There is testimony that the men were in the house some forty minutes. The neighbor boy and his mother notified the police who shortly thereafter arrested the defendant and Turner and found the property which had been removed in defendant's car.

Defendant called Turner as a witness. Turner had been charged with the same offense and was awaiting trial. Defendant in his argument to this court concedes that at the time he called Turner, he had full knowledge that Turner would invoke the Fifth Amendment. Turner did refuse to testify as to the pertinent evidence and the court properly held he had a right to do so under the Fifth Amendment.

Defendant in his motion for new trial states: "VI. New evidence is now available to the defendant that was not so available at the time of the trial. Said evidence is significant and could be sufficient to acquit the defendant." No supporting affidavit was filed nor was any attempt made to offer any proof or make any record showing with respect to the nature and scope of the newly discovered evidence. In a brief filed in the district court in support of the motion, defendant discloses that the newly discovered evidence is that of his associate Turner. The brief does state that Turner, by a plea of guilty and conviction entered several days after defendant's trial, lost his

Fifth Amendment immunity and is now available as a witness but there is no showing with respect to the testimony which Turner might give.

We agree with defendant's contention that Rule 33, Fed.R.Crim.P., authorizes the granting of a new trial in the interests of justice upon the ground of newly discovered evidence in an appropriate situation. In McCroskey v. United States, 8 Cir., 339 F.2d 895, 897, we stated:

"Thirty-five years ago, this court, in Johnson v. United States, 32 F.2d 127, 130 (8 Cir. 1929), listed five requirements generally recognized for the granting of a new trial for newly discovered evidence: the evidence must in fact be newly discovered since the trial; facts must be alleged from which the court may infer diligence; the evidence must not be merely cumulative or impeaching; it must be material; and it must be such that, on a new trial, it 'would probably produce an acquittal'. We have repeatedly recognized these in recent cases. Ferina v. United States, supra, p. 107 of 302 F.2d [95]; Connelly v. United States, supra, p. 335 of 271 F.2d [333]; Edgar v. Finley, supra, p. 537 of 312 F.2d [533]."

In the case last cited, we held that the motion for new trial is addressed to the sound discretion of the trial court and that the trial court's determination will be upset only upon a clear showing of abuse of discretion.

Defendant in order to prevail must meet each of the standards set forth in *McCroskey*. If he has failed to meet any one of the standards, he has failed to establish his right to a new trial. Here, as in *McCroskey*, we find the defendant has utterly failed to meet the standard requiring that the newly discovered evidence "must be such that, on a new trial, it 'would probably produce an acquittal.'"[1]

---

1. Defendant raises the interesting question of whether the testimony of Turner, unavailable at the trial because of Fifth

Amendment immunity and now likely available because of Turner's subsequent conviction, is the equivalent of newly dis-

Inasmuch as the record fails to disclose any information whatsoever as to what Turner would testify to if called as a witness at a new trial, we find no support whatever for a determination that Turner's evidence, if offered, would probably produce an acquittal.[2]

 Defendant has wholly failed to demonstrate that the trial court abused its discretion in denying his motion for new trial.

Defendant's final contention, first raised in the motion for a new trial, is that the court erred in failing on its own motion to instruct the jury to disregard the testimony of Turner and not to draw any inferences from Turner's claim of Fifth Amendment privilege. Defendant concedes that he requested no such instruction and that he took no exception to the instructions given.

Defendant relies principally upon United States v. Maloney, 2 Cir., 262 F.2d 535, and Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 to support his position. In *Maloney,* the majority did hold that under the peculiar circumstances there before the court, it was error not to give a cautionary instruction such as the defendant here urges. The court recognizes that when the prosecution puts on a witness which it knows will claim the Fifth Amendment, it is highly probable that the jury will draw an inference that the witness, if he had answered, would have supported the prosecution and that on the other hand, if the prosecution does not put on the witness, the jury may well assume that the witness, if called, would testify for the accused. The court recognizes that both such inferences would be unfair and states: "We must confess that the

situation is one in which either alternative results in prejudice to one side or the other; and it is impossible, so far as we can see, to lay down any general rule that will cover all instances." 262 F.2d 535, 537. With respect to the probable effect of a cautionary instruction upon the jury, the court observes:

"As *res integra,* it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them, imposing, as they do, upon the jury a task beyond their powers: i. e. a bit of 'mental gymnastics,' as Wigmore § 2272 calls it, which it is for practical purposes absurd to expect of them." 262 F.2d 535, 538.

The court then calls attention to the fact that the Supreme Court in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 upheld the conviction of multiple defendants upon the basis that an instruction to the jury, that a confession by one defendant should be given no consideration in determining the guilt of other defendants, cured any prejudice that resulted from admitting in evidence the confession of a defendant implicating other defendants. The court holds that the same ritual should be applied to the situation confronting it.

Judge Hincks, in a strong dissent, agrees that the defendant should be entitled to the instruction but only if he requests it. He observes that in many situations a party will feel the instruction does more harm than good and may not want it and that the error in failing to instruct sua sponte does not constitute plain error.

Moreover, in *Maloney* the witnesses were offered by the prosecution with knowledge that at least two or three of

---

covered testimony. We find it unnecessary to resolve such issue since it is clear that the judgment must be affirmed for reasons set out in the opinion.

2. Defendant on brief here states that Turner, when arrested, first gave the authorities a statement exonerating the defendant and that on the next day he made a statement implicating the defendant. Since such statements do not appear

in the record, it would appear that such information was not available to the trial court. This case of course must be determined upon the record made. We do not intend to imply that the indefinite, conflicting statements of Turner, if they were in the record, would compel a determination that Turner's evidence would meet the standard of probably producing an acquittal.

the witnesses would invoke the Fifth Amendment. Thus, it was the prosecution which hoped to gain the benefit of any inference which might arise from the witnesses' refusal to testify. In our present case, the witness was offered by the defendant with complete knowledge that the witness would claim his Fifth Amendment rights.

Defendant in his brief frankly states: "The appellant has no choice but to bring Odell Turner to the stand. His testimony was relevant and material to the defense and, the only defense the appellant had. Had the appellant failed to bring the witness forward the government could have argued to the jury that Turner's testimony would not corroborate the appellant's testimony."

In the event Turner were not produced by the defendant, the prospect would likely exist that the jury would wonder why Turner had not been produced to corroborate the defendant. Thus, it would appear that in our present case defendant hoped, just as the prosecutor did in *Maloney*, that a favorable inference would flow from his production of the witness. The basis for the inference would be that a party would not be likely to call a witness and ask him relevant questions unless a favorable answer was anticipated.

In the setting here presented, it would appear that the instruction the defendant is now urging would have been more harmful than beneficial to defendant. If such is not the case, it would appear to have served little purpose for the defendant to call the witness. As previously pointed out, defendant's defense is bottomed on the theory that he in good faith believed that Turner had been given the property which had been removed. If defendant's testimony as to his good faith is believed, any implication that might arise that Turner might be guilty would have little if any bearing upon defendant's guilt. We observe that neither the prosecutor nor defense counsel in argument discussed any inferences to be drawn from Turner's refusal to testify.

We find nothing helpful to defendant's position in *Namet*. In that case, it was the prosecutor who produced the witness with knowledge that the Fifth Amendment would be invoked. The Court, at pp. 186–187 of 373 U.S. at p. 1154 of 83 S.Ct. points out that the cases do not invariably hold that reversible error is committed whenever a party calls a witness who claims his privilege not to answer and states:

"Rather, the lower courts have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.

\* \* \* \* \* \*

"A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."

The first theory above discussed does not apply in our present case as no prosecutorial misconduct is either claimed or proven. With respect to the second theory, the witness was offered by the defense with a hope of gaining a favorable inference therefrom. The Government had made a submissible case prior to the time Turner was produced by the defendant. The Court in *Namet*, p. 190, 83 S.Ct. p. 1156, makes clear that it is not holding that cautionary instructions are required in every situation, observing, "The petitioner would have us hold that even in these circumstances the court committed reversible error because it did not, *sua sponte*, take some affirmative action. We see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself

appeared to disregard." The Court states at footnote 10, p. 190, 83 S.Ct. 1156, that it disclaims passing upon the validity of the *Maloney* holding that a failure to give proper curative instructions constitutes plain error.

It is difficult for us to see how the instruction here urged could possibly be of any benefit to the defendant under the factual situation here presented. As a matter of fairness to the trial court, defendant should have requested the instruction if he desired to have it given. It would be a very simple matter for the defendant to request any instruction desired in the manner prescribed by Rule 30 of the Federal Rules of Criminal Procedure.

Defendant has failed to meet the heavy burden resting upon him to establish that the court's failure to give sua sponte the instruction now suggested constitutes plain error under Rule 52(b). We do not believe that the failure to give such an instruction in the setting here presented affected the substantial rights of the defendant.

The judgment appealed from is affirmed.