**UNITED STATES of America, Appellee,**

v.

**Harry PACKER, III, Appellant.**

No. 82–2145.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1983.

Decided March 27, 1984.

John Dodge, Rogers, Ark., for appellant.

W. Asa Hutchinson, U.S. Atty., Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Harry R. Packer, III, appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas upon a jury verdict finding him guilty of attempting to manufacture mescaline, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1976), and aiding and abetting the attempted manufacture of mescaline in violation of 18 U.S.C. § 2 (1976). Appellant was sentenced to a term of two years imprisonment, twenty-three months of which were suspended, and placed on probation for twenty-three months. For reversal appellant argues that the district court erred in (1) finding that the affidavit for a search warrant was sufficient to establish probable cause, (2) denying his motion to suppress statements made after his arrest, (3) denying his motion for a mistrial and his attorney's request to be relieved as counsel, and (4) failing to dismiss the indictment under the Speedy Trial Act.

Pending appeal on these issues, appellant filed with this court a motion to remand to the district court for a hearing on the sufficiency of the affidavit for the search warrant based on newly discovered evidence of an unjustified pre-warrant search of his premises. For the reasons discussed below, we affirm the judgment of the district court and deny appellant's motion to remand.

On February 27, 1982, a Drug Enforcement Administration (DEA) agent applied to a federal magistrate for a warrant to search appellant's residence, a trailer located in an isolated rural area. The application was accompanied by the agent's affidavit which recited the facts leading the agent to believe that appellant was manufacturing mescaline and that laboratory equipment and chemicals used to manufacture mescaline were located in appellant's trailer.

The magistrate issued the warrant, and at approximately 9:45 a.m. on February 28, 1982, the DEA agent, a DEA chemist and two local law enforcement officers who had participated in the investigation arrived at appellant's trailer. A search revealed the presence of a laboratory operation including miscellaneous laboratory equipment, scientific glassware, chemicals, and formulas, as well as numerous containers of unknown substances later identified as intermediate precursors to mescaline.

While the DEA agent was inside the trailer, appellant was arrested outside by one of the local officers and advised of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant stated that he wished to remain silent and invoked his right to an attorney. A few minutes thereafter, the agent came out of the trailer, checked on whether appellant had been advised of his rights, again advised appellant of his rights, and asked appellant if he would accompany him and the chemist back inside the trailer to make sure that there were no hazardous or explosive materials. Appellant agreed and while inside the trailer explained the procedures and chemicals he was using in what he claimed was the manufacturing process of rat poison. At one point, the agent asked appellant if he was making mescaline to which appellant replied that he would rather not answer that question. The conversation was terminated, the men went back outside, and appellant was taken to the county detention center.

The next day, on March 1, 1982, appellant was brought before a federal magis-

* The Honorable William R. Collinson, United States Senior District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

trate and a complaint was filed. On that same day, a state law enforcement officer interrogated appellant at the detention center after reading him his *Miranda* rights and obtaining a signed waiver form. This interrogation was conducted without the presence of an attorney. Appellant told the officer that he was manufacturing mescaline in his home laboratory for a friend in California, Mike Cadwell, who gave him the necessary formulas and money for supplies. The officer suggested the possibility of appellant calling Cadwell on the telephone and allowing the call to be taped, and told appellant to discuss the suggestion with an attorney.

On March 5, 1982, appellant was again questioned, this time with an attorney present. When the interrogating officer attempted to read appellant his *Miranda* rights, the attorney said there was no need to read them. Appellant then telephoned Cadwell in California and the conversation, dealing with various aspects of the chemical process of manufacturing mescaline, was taped. There is a dispute regarding promises of leniency made to appellant in return for making the telephone call and regarding a promise that the call would not be used against appellant.

On March 11, 1982, appellant and Cadwell were jointly indicted for aiding and abetting each other in the manufacture of mescaline. Appellant was arraigned on March 15, 1982, and entered a plea of not guilty. On March 16, 1982, appellant filed his first pretrial motion. On April 22, 1982, a superseding indictment charged appellant and Cadwell with aiding and abetting each other in attempting to manufacture mescaline.

On May 17, 1982, appellant filed a motion to suppress statements, and on May 18, 1982, he filed a motion to suppress the search warrant. On May 25, 1982, appellant filed a motion to dismiss for violation of the Speedy Trial Act. These motions were heard and ruled upon on June 3, 1982, the first day of trial. The district court ruled that statements made by appellant during the March 1, 1982, interrogation were inadmissible under *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), but that statements made in the trailer following his arrest and during the March 5, 1982, interrogation, including the tape of his conversation with Cadwell, were admissible. The district court denied appellant's motions to suppress the search warrant and to dismiss the indictment, and appellant proceeded to trial.

At trial the DEA agent testified about the investigation and surveillance involved in the case, as well as the events which transpired at the time of appellant's arrest. He also identified numerous items, including chemicals, laboratory equipment and scientific literature, taken from appellant's residence pursuant to the search warrant. The tape of the March 5, 1982, telephone conversation between appellant and Cadwell was played to the jury. The DEA forensic chemist explained how the telephone conversation directly related to the manufacture of mescaline. The chemist also testified that appellant possessed the essential chemicals, equipment, and formulas to manufacture mescaline and that one of the substances found in the trailer was one step removed from mescaline.

On the morning of the second day of trial, before the jury was called in, appellant's counsel moved for a mistrial and to be relieved as counsel so that he could testify for his client, at a new trial, regarding the government's alleged promise that the telephone conversation would not be used against appellant. The district court denied this motion.

Various witnesses, including neighbors, friends, and a chemistry professor, testified on behalf of appellant. Appellant did not testify on his own behalf. The jury returned a guilty verdict and this appeal followed.

### Sufficiency of Affidavit

Appellant's first point on appeal is that the district court erred in finding that the affidavit in support of the search warrant contained sufficient information to establish probable cause. Specifically, appellant

argues that because all the facts set out in the affidavit were consistent with innocent activity, the issuing magistrate could not infer therefrom criminal activity.

The affidavit in question recited the following: On January 8, 1982, the affiant was advised by an Arkansas law enforcement officer that he had received information from Eastman Kodak Co., Rochester, New York, that a Harry Packer, Route 1, Box 339, Green Forest, Arkansas, had ordered certain chemicals which the affiant knew from his experience were used in the manufacture of mescaline. Packer had stated to a Kodak employee that he had started a company and was using these chemicals for the purpose of making rat poison. On January 25, 1982, the affiant and two state officers located Packer's residence and noted that there was no outward appearance of a legitimate laboratory business. The manager of the local hardware store was questioned and informed the officers that Harry Packer had purchased numerous items of piping, hose fittings, gaskets, and clamps which the affiant knew were laboratory equipment used in the manufacture of mescaline.

From January 25, 1982, to February 17, 1982, the affiant made inquiries to three chemical companies (in St. Louis, Missouri, Memphis, Tennessee, and Milwaukee, Wisconsin) and learned that Packer had purchased a total of twenty-four different chemicals. The affiant related this information to a DEA forensic chemist who concluded, based on his education and experience, that Packer was engaged in the manufacture of mescaline.

On February 22, 1982, Packer was observed by a surveillance officer picking up and driving the chemicals he had previously ordered from Eastman Kodak Co. to his residence.

On February 24, 1982, the affiant and other surveillance officers observed Packer come out of his residence, measure and pour chemicals and reenter the residence. The affiant knew that it is a common practice among clandestine laboratory operators to measure chemicals outdoors to prevent the accumulation of fumes and odors inside the laboratory. On the morning of February 27, 1982, one of the state officers reported to the affiant that he observed Packer going in and out of his residence on numerous occasions. The affiant knew that at a particular stage in the manufacture of mescaline the strong odor of solvents would suggest that a person get fresh air to prevent the inhalation of toxic chemicals. Finally, the affiant smelled ether-type fumes associated with the manufacture of mescaline coming from Packer's residence.

█ In evaluating the sufficiency of the affidavit we must keep in mind that courts "evince a strong preference for searches made pursuant to warrant, and, in some instances, may sustain them where warrantless searches based on a police officer's evaluation of probable cause might fail." *United States v. Carlson*, 697 F.2d 231, 237 (8th Cir.1983); *United States v. Brown*, 584 F.2d 252, 256 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). Accordingly, reviewing courts should interpret affidavits for search warrants "in a commonsense and realistic fashion, and deference is to be accorded an issuing magistrate's determination of probable cause." *United States v. Carlson*, 697 F.2d at 237; *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983).

█ The affidavit need only establish the *probability* of criminal activity and presence of evidence on specific premises, not proof beyond a reasonable doubt. *United States v. Brown*, 584 F.2d at 257. It is not required that the affidavit allege direct observation of criminal activity in order to justify the issuance of a warrant. *Id.* at 256. Furthermore, as we recently noted,

"observation of apparently innocent acts can be significant to a trained officer and . . . the officer is entitled to assess probable cause in light of his experience. In addition it is settled in this circuit that

when an application for a warrant is being considered, the issuing magistrate may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit."

*United States v. Bentley,* 706 F.2d 1498, 1504 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983) (*quoting United States v. Carlson,* 697 F.2d at 238).

■ Applying these principles to the present case, we are satisfied that the affidavit in question provided a sufficient basis for the magistrate's finding of probable cause. The citizen informant's tip concerning the purchase of chemicals recognized by the authorities as used in the manufacture of mescaline, the detailed recitation of information obtained through a subsequent investigation as well as the significance of such information as assessed by DEA agents whose extensive training and experience are set forth in the affidavit, along with the remaining acts recited in the affidavit, raised more than a mere suspicion of criminal activity. We, therefore, hold that the warrant was validly issued.

Because appellant's motion to remand relates to the validity of the affidavit and search warrant, we will discuss that matter here. In his motion, appellant asserts that pending this appeal a prosecuting attorney for the state of Arkansas informed appellant's counsel that one of the state officers who provided information used in the affidavit for the search warrant conducted an illegal search of appellant's residence a short time before the search warrant was obtained and that the affiant was aware of this prior illegal search. Appellant seeks a rehearing in the district court on whether the warrant was valid based on this newly discovered evidence.

■ The motion for a new trial upon the ground of newly discovered evidence is generally addressed to the sound discretion of the district court. *Edwards v. United States,* 361 F.2d 732, 734 (8th Cir.1966). In the present case, however, appellant fails as a matter of law to meet the requirement

recognized by this court that the newly discovered evidence be material. *See United States v. Pope,* 415 F.2d 685, 691 (8th Cir.), *cert. denied,* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1969); *Edwards v. United States,* 361 F.2d at 734.

■ An illegal entry will not invalidate a subsequent search warrant where information acquired as a result of the illegal entry was not necessary to the finding of probable cause supporting the warrant. *United States v. McCain,* 677 F.2d 657, 661–62 (8th Cir.1982); *United States v. Beck,* 662 F.2d 527, 530 (8th Cir.1981); *United States v. Williams,* 633 F.2d 742, 744–45 (8th Cir.1980). Scrutiny of the affidavit in the present case reveals that the information therein essential to the finding of probable cause was gained from a citizen informant (an Eastman Kodak Co. employee) and through investigation and surveillance by law enforcement officers. The only information in the affidavit which might have been the result of a prior illegal entry by a state officer was that appellant went in and out of his trailer several times on the morning of February 27, 1982. While this information was relevant in light of the affiant's relation of the conduct to the manufacture of mescaline, it was not necessary to a finding of probable cause. Thus, even if the allegations in the motion are true, appellant would not be entitled to a new trial. Accordingly, we deny appellant's motion to remand.

*Suppression of Statements*

Appellant's next point on appeal is that the district court erred in admitting into evidence (a) statements he made on February 28, 1982, to the DEA agent after his arrest and invocation of his *Miranda* rights, and (b) statements he made, including the tape of his telephone conversation with Cadwell, during the March 5, 1982, interrogation.

At the pretrial suppression hearing, the district court ruled that the statements made by appellant on February 28, 1982, explaining the chemicals and processes he

was using in his home laboratory for the manufacture of what he claimed was rat poison, were not incriminating and, therefore, admissible. We believe that the district court erred in characterizing the statements as non-incriminating. As the Supreme Court recognized in *Miranda*, 384 U.S. at 476–77, 86 S.Ct. at 1628–29,

> The privilege against self-incrimination protects the individual from incriminating himself in any manner; it does not distinguish degrees of incrimination.... [N]o distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory." If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial .... These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required of any other statement.

 It is not disputed that there was no effective waiver of rights before appellant made the statements in question and they therefore should have been suppressed. *But cf. United States v. Castellana*, 500 F.2d 325, 326–27 (5th Cir.1974) (en banc) (question of accused, not informed of his rights, as to presence of firearms justified by personal safety concerns of arresting officers and therefore response of accused admissible). The finding of a *Miranda* violation, however, does not end our inquiry. The admission of statements obtained in violation of *Miranda* may constitute harmless error when there remains overwhelming independent evidence as to the defendant's guilt. *Harryman v. Estelle*, 616 F.2d 870, 875–77 (5th Cir.), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980); *Null v. Wainwright*, 508 F.2d 340, 343 (5th Cir.), *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975). Although this standard for finding harmless error is an exacting one, we conclude that it is satisfied here. The other evidence against appellant, including the physical evidence and appellant's other statements which, as discussed below, were properly admitted, was overwhelming. *See United States v. Steele*, 610 F.2d 504, 506 (8th Cir.1979).

We next consider the admissibility of statements made by appellant during the March 5, 1982, interrogation. As mentioned earlier, the district court ruled that statements made by appellant during the March 1, 1982, interrogation were inadmissible under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, which held that "an accused ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

 It is not disputed that appellant asserted his right to counsel at the time of his arrest and that incriminating oral admissions were elicited in the subsequent March 1, 1982, police-initiated custodial interrogation in the absence of counsel. A valid waiver of appellant's right to counsel was not affected by the fact that he was advised of his rights at the March 1, 1982, interview and signed a waiver form. *Edwards v. Arizona*, 451 U.S. at 484, 101 S.Ct. at 1884. The district court was thus correct in suppressing appellant's March 1, 1982, statements. However, the "Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." *United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947). The determinative issue becomes whether appellant knowingly and intelligently waived his privilege against self-incrimination subsequent to March 1, 1982. We hold that appellant waived his privilege when he reiterated and supplemented his

prior statements on March 5, 1982, in the presence of and upon the advice of counsel.

The Eleventh Circuit was recently presented with the issue of the admissibility of an accused's statements made during a police interrogation in the presence of counsel subsequent to an improper interrogation which elicited a confession and held as follows:

> The stringent test of waiver as mandated by the Supreme Court [in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Oregon v. Bradshaw*, —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983),] ... was designed specifically for situations in which an accused does not have the safeguard of a knowledgeable attorney to represent his interests. In instances where such an attorney does appear, as here, it no longer controls.

*Bartlett v. Allen*, 724 F.2d 1524, 1528 (11th Cir.1984). We agree and hold that the improper March 1, 1982, interrogation did not render appellant's March 5, 1982, statements inadmissible.

■ We also reject appellant's argument that the March 5, 1982, statements were inadmissible because (a) they were induced by promises of leniency and therefore involuntary and (b) appellant was told that the telephone call to Cadwell would not be used against appellant. At the pretrial suppression hearing, the interrogating officer testified that no promises of leniency were made although appellant was told that cooperation on his part would be made known to the appropriate authority. The officer also testified that he did not promise appellant that the telephone conversation with Cadwell would not be used against him, but, to the contrary, that he attempted to read appellant his *Miranda* warnings and was told by appellant's counsel not to continue because appellant understood his rights. Appellant testified that he was promised that in return for calling Cadwell his bond would be reduced and several counts against him would be dropped, and further that the telephone conversation would not be used against

him. Appellant's testimony was supported by his counsel who was present during the March 5, 1982, interrogation. Appellant admitted that the interrogating officer began to read him his *Miranda* warnings.

■ Resolution of both these issues necessarily involved an assessment of the credibility of the witnesses by the district court, which the district court specifically resolved in favor of the government. We have reviewed the record and conclude that this finding is not clearly erroneous. *See United States v. Poitra*, 661 F.2d 98 (8th Cir.1981) (per curiam). A promise that cooperation by an accused would be made known to the appropriate authority is insufficient inducement to render an incriminating statement involuntary. *United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir. 1983); *United States v. Jacks*, 634 F.2d 390, 393 (8th Cir.1980). We thus find no basis for excluding appellant's March 5, 1982, statements. The motion to suppress was properly denied.

■ Appellant's motion for a mistrial made just before the close of the government's case and his counsel's concurrent request to be relieved as counsel so that he could testify on behalf of appellant at a new trial about the alleged promises made during the March 5, 1982, interrogation, were also properly denied. We find appellant's claim of surprise that the government would use the telephone conversation totally unconvincing. The motion for mistrial and request to be relieved as counsel were clearly untimely and without merit.

*Speedy Trial Act*

■ Appellant's final argument on appeal is that his trial was not timely under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976 & Supp. V 1981), and that the district court therefore erred in failing to dismiss the indictment. This argument merits little discussion.

> The Speedy Trial Act provides that
>
> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the

filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

*Id.* § 3161(c)(1).

Although eighty-six days elapsed in the present case between the filing of the indictment on March 11, 1982, and the commencement of trial on June 3, 1982, numerous pretrial motions gave rise to "excludable time" under 18 U.S.C. § 3161(h)(1)(F), bringing the commencement of the trial well within the permissible period. *See United States v. Fogarty,* 692 F.2d 542, 545 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983); *United States v. Stuart,* 689 F.2d 759, 762–63 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983); *United States v. Brim,* 630 F.2d 1307, 1312–13 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

Accordingly, we affirm the judgment of the district court and deny appellant's motion to remand.