UNITED STATES of America,
Plaintiff–Appellee,

v.

John Derek O'NEAL, Defendant–
Appellant.

No. 93–2399.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1993.

Decided Feb. 17, 1994.

Rehearing Denied March 29, 1994.

Counsel who presented argument on behalf of the appellant was Douglas W. Scheel of St. Paul, MN.

Counsel who presented argument on behalf of the appellee was Nathan P. Petterson of Minneapolis, MN.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

LAY, Senior Circuit Judge.

John D. O'Neal was indicted on a charge of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) (1988). O'Neal filed a motion to suppress 136 grams of crack cocaine seized from his luggage at the Minneapolis Greyhound Bus terminal, claiming that the stop and the seizure of his bag by police were unlawful. The district court held that the stop and seizure were reasonable under the Fourth Amendment. O'Neal then entered a conditional guilty plea and was sentenced to a mandatory minimum of ten years in prison to be followed by five years of supervised release. O'Neal now appeals the ruling on his suppression motion. We affirm.

## I.

The relevant facts of the case may be briefly summarized. O'Neal and his brother arrived in Minneapolis on a Greyhound Bus from Chicago on the morning of October 31, 1992. Several Minneapolis police and Hennepin County Sheriff's officers were watching the bus depot for possible drug couriers. O'Neal and his brother were approached by the officers and questioned. During the

course of the interrogation, one of the officers seized O'Neal's carry-on bag for purposes of a canine sniff test. As that officer left with the bag, another officer asked O'Neal whether the bag contained drugs, and O'Neal admitted that it did. After the dog alerted to the bag, O'Neal was arrested, read his *Miranda* rights, and taken to the police station. The police obtained a search warrant for the bag, and upon execution of the warrant, found the cocaine.

## II.

### A.

The government acknowledges that for the seizure of O'Neal's bag to be valid, the officer was required to have a reasonable, articulable suspicion that criminal activity was afoot.[1] *United States v. Place*, 462 U.S. 696, 708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); *United States v. Weaver*, 966 F.2d 391, 393–94 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992). Reasonable suspicion must be based on the particular facts known to the officer and the inferences rationally to be drawn from those facts, as viewed in the totality of the circumstances and in light of the officer's experience. *Id.* at 394; *see also United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989).

A magistrate judge held a hearing on O'Neal's suppression motion and recommended to the district court a finding that there was reasonable, articulable suspicion to seize the bag. The magistrate judge made the following findings of fact, accepted by the district court: The defendant and his brother got off a bus from a "source city" for drugs (Chicago); O'Neal was a black male wearing a Chicago Bulls Starter jacket; O'Neal and his brother walked "briskly" to the outer door leading to the parking lot, rather than into the bus terminal; they were carrying "athletic-type" bags; O'Neal "stared" at one of the officers, who thought O'Neal looked apprehensive; O'Neal and his brother lit cigarettes; the officers approached O'Neal and

---

1. The government concedes that at the time of the seizure of the bag, there was no probable cause.

his brother and told them that they were not under arrest but that they wanted to ask them a few questions; O'Neal told the officers that he lived in Chicago[2] and was going to visit his sister's home located at Eleventh and Lake (the sister later testified that she lives in a duplex at 2941 Eleventh Avenue South, near the intersection of Eleventh and Lake); O'Neal produced an Illinois Public Welfare card as identification; one of the officers thought the picture did not resemble the defendant (later, the officer agreed that it was the defendant); the officer asked if O'Neal and his brother had bus tickets, but when O'Neal's brother responded that they did and that he was carrying both of them, the officer did not ask to see them; during the interrogation, two of the officers noticed that O'Neal was "sweating profusely" and appeared nervous; the officers stated they were narcotics agents and asked to search O'Neal's bag; O'Neal responded that they would need a search warrant.

One of the officers thereafter seized the bag and told O'Neal, "You are free to go. You are not under arrest, but the bag is going with me. I am going to get a search warrant for it." The officer took the bag inside the depot, and a canine sniff test indicated that the bag contained narcotics.

Based upon the collective weighing of the above facts, we hold that the evidence fails to demonstrate objectively reasonable, articulable suspicion justifying the seizure of the bag. *See Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam).[3] This circuit, like others, has engaged in many exhaustive discussions as to what conduct is sufficient to create reasonable, articulable suspicion justifying a seizure of baggage. *See, e.g., United States v. McKines,* 933 F.2d 1412 (8th Cir.) (en banc), cert. denied, — U.S. —, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991); *United States v. White,* 890 F.2d 1413 (8th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990); *United States v. Walker,* 7 F.3d 26 (2d Cir.1993); *United States v. McCarthur,* 6 F.3d 1270 (7th Cir.1993); *United States v. Frost,* 999 F.2d 737 (3d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993); *United States v. Wilson,* 953 F.2d 116 (4th Cir.1991). Often these cases are so closely decided that even within this circuit, similar fact patterns have led to different results. *Compare United States v. Weaver,* 966 F.2d 391 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992) *with United States v. Millan,* 912 F.2d 1014 (8th Cir.1990). The facts of this case, however, are free of such difficulties. In the present case, there is a compelling lack of any evidence that might be said to engender reasonable, articulable suspicion.

█ The mere fact that young people wear athletic jackets and carry athletic bags hardly presents a basis to believe that they are

**2.** O'Neal answered "Yeah, but—no" to the officer's question of whether he lived in Minneapolis. He then responded affirmatively to the question of whether he lived in Chicago.

**3.** In *Reid,* the suspect flew from a principal source city (Fort Lauderdale) to Atlanta, arrived early in the morning, and had no baggage other than a shoulder bag. 448 U.S. at 441, 100 S.Ct. at 2754. According to the DEA agent observing him, as Reid walked through the concourse, he occasionally looked over his shoulder in the direction of a second man carrying a similar shoulder bag. *Id.* at 439, 100 S.Ct. at 2753. The two men spoke briefly and then left the terminal building together. *Id.* Reid's ticket showed a visit of only one day in Fort Lauderdale, and Reid and his companion appeared nervous during questioning with the officers. *Id.* at 439, 100 S.Ct. at 2753. The Court said all but the occasional looking back to the second man in the concourse "describe a very large category of

presumably innocent travellers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Id.* at 441, 100 S.Ct. at 2754. Moreover, the Court said the possibility that the two men were attempting to conceal that they were traveling together was "simply too slender a reed to support the seizure." *Id.*

By contrast, the Court did find reasonable suspicion in *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), where the officers knew that the suspect had paid $2,100 for two airplane tickets from a roll of $20 bills; travelled under a name that did not match his telephone listing; was travelling to Miami, a source city for drugs; stayed in Miami for forty-eight hours, even though a round-trip flight from Honolulu takes twenty hours; appeared nervous during his trip; and checked none of his luggage. We believe the facts in the present case are much closer to those in *Reid* than to those in *Sokolow.*

criminals.[4] Add to this that they come from Chicago or ride a bus or smoke or even appear to be nervous, and there is still nothing collectively to suggest that criminal activity is afoot. *Cf. White*, 890 F.2d at 1418 (noting that "becoming nervous when one is confronted by officers of the law is not an uncommon reaction"). There is nothing in the evidence to suggest that O'Neal's conduct prior to the seizure was anything but unremarkable.

 Police officers are, of course, always free to approach citizens and question them if they are willing to stay and listen. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). Without at least reasonable suspicion, though, officers may not even temporarily seize a person or his luggage. *Place*, 462 U.S. at 708–09, 103 S.Ct. at 2645–46; *White*, 890 F.2d at 1416. For the reasonable suspicion standard to have meaning, officers must be required to have more than a "hunch" that a suspect is carrying drugs.[5] *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Weaver*, 966 F.2d at 394. The facts of this case do not even justify a hunch. As we have previously noted, "conduct typical of a broad category of innocent people provides a weak basis for suspicion." *United States v. Crawford*, 891 F.2d 680, 681 (8th Cir.1989). If the facts here were deemed sufficient to establish reasonable, articulable suspicion, then every traveller would potentially be subject to having luggage seized at the mere discretion of the police. *See Reid*, 448 U.S. at 441, 100 S.Ct. at 2754. We consequently hold that there was no reasonable suspicion and that the seizure of the defendant's bag was illegal.

### B.

 The above finding does not end our inquiry.[6] Based on our determination that

---

**4.** One of the officers testified that "street gang members often wear Starter jackets." We note that many non-gang members wear Starter jackets as well.

**5.** The magistrate found that the officers felt the defendant fit the profile of a drug courier. Our study of the record fails to disclose such testimony. Even if the officers did make this subjective appraisal, the drug courier profile has little meaning independent of the objective facts. As Chief Justice Rehnquist observed in *Sokolow*:

> We do not agree with respondent that our analysis is somehow changed by the agents' belief that his behavior was consistent with one of the DEA's "drug courier profiles." A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a "profile" does not somehow detract from their evidentiary significance as seen by a trained agent.

490 U.S. at 10, 109 S.Ct. at 1587 (citation and footnote omitted). Justice Marshall, dissenting in *Sokolow*, warned of the dangers of a stop based solely upon an officer's subjective view that the characteristics of a "drug courier profile" were met:

> Reflexive reliance on a profile of drug courier characteristics runs a far greater risk than does ordinary, case-by-case police work of subjecting innocent individuals to unwarranted police harassment and detention. This risk is enhanced by the profile's "chameleon-like way

of adapting to any particular set of observations."

*Id.* at 13, 109 S.Ct. at 1588–89 (quoting court of appeals opinion in *United States v. Sokolow*, 831 F.2d 1413, 1418 (9th Cir.1987)).

**6.** The government urges on appeal that "even if this Court disagrees with the district court's finding of a reasonable suspicion, the denial of the defendant's motion to suppress should still be affirmed" under the good-faith rule of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Government's Br. at 13–14. In making this argument, the government assumes, as O'Neal does, that the search warrant authorizing the search of O'Neal's bag was based solely on the dog sniff after the seizure. As our analysis above indicates, we conclude that the warrant was, in fact, supported on grounds other than those stemming from the illegal seizure of the bag. We believe it important to emphasize our rejection, however, of the government's view that "even if the Court finds defendant's bag was seized in violation of the Fourth Amendment," *id.* at 14, and probable cause for the warrant was established "[o]nce the dog alerted to the bag," *id.* at 13, the evidence discovered pursuant to the warrant should be deemed admissible because of the searching officers' good-faith belief in the warrant's validity.

In *United States v. White*, 890 F.2d 1413 (8th Cir.1989), *cert. denied*, 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990), this Court held that the *Leon* good-faith exception does apply to some searches conducted under a warrant based on

the seizure of the bag was illegal and our rejection of the good-faith exception to the exclusionary rule in this instance, O'Neal urges that the denial of his suppression motion must be reversed. To the extent of the facts considered, we would agree. Had the magistrate relied on the canine sniff test alone to decide that probable cause existed to issue a warrant to search the bag, we would conclude that because the seizure of the bag for the test was illegal, the evidence seized pursuant to the resulting search would have to be excluded.

The problem with O'Neal's argument, however, is that the magistrate did not rely on the canine sniff test alone. The affidavit submitted with the warrant application refers both to the canine sniff and to O'Neal's admission to one of the officers that drugs were present in the bag.[7] O'Neal does not challenge the admission on appeal, and we therefore must accept the lower court's determination that the admission was voluntarily given in a non-custodial encounter with the police.[8]

evidence obtained in violation of the Fourth Amendment. *See also United States v. Kiser*, 948 F.2d 418 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). We must, of course, follow *White*. Neither *White* nor *Leon*, however, are unqualified in their application. The Supreme Court in *Leon* stated that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." 468 U.S. at 922–23, 104 S.Ct. at 3420 (citation and footnotes omitted). In *White*, this Court emphasized that although the facts failed to demonstrate reasonable, articulable suspicion, the facts were "close enough to the line of validity" that the officers were entitled to a good faith belief that reasonable suspicion existed. 890 F.2d at 1419. It was the closeness of the particular facts that "push[ed] this case into the gray area created by *Leon*." *Id*. Here we find the opposite to be true. No facts prior to the seizure of O'Neal's bag could reasonably support the seizure. No officer could in good faith believe that the facts would lead a reasonable person to believe that O'Neal was involved in criminal activity.

If the method by which evidence supporting a search warrant is seized is clearly illegal, then even under *Leon* and *White*, evidence obtained under the resulting warrant should be excluded. The Court in *Leon* stated that evidence obtained pursuant to a warrant should be suppressed only when "exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 104 S.Ct. at 3418. That is the case here. In the Court's words, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916, 104 S.Ct. at 3417. A magistrate issuing a warrant reviews affidavits for probable cause, *see Leon*, 468 U.S. at 921, not the methods by which the officers arrived at the facts presented. Indeed, a magistrate evaluating a warrant application is in no position to pass upon the legality of any prior warrantless search. *See United States v. Vasey*, 834 F.2d 782, 789 (9th Cir.1987). Thus, when a magistrate errs in evaluating the sufficiency of the evidence supporting a probable

cause determination, excluding evidence obtained in an ensuing search will serve little purpose. *Leon*, 468 U.S. at 916–17, 104 S.Ct. at 3417–18. Here, however, the issue is *police misconduct*, the target of the exclusionary rule as recognized in *Leon*.

If clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated. *See* Craig M. Bradley, "The 'Good Faith Exception' Cases: Reasonable Exercises in Futility," 60 Ind.L.J. 287, 302 (1985) (quoted in 1 Wayne R. LaFave, *Search & Seizure* § 1.3(f) (2d ed. 1987)). LaFave adds that "when the warrant-issuing process leaves totally unresolved the lawfulness of the prior police activity, then there is no reason why that process should, via *Leon*, shield that activity from full scrutiny at the suppression hearing." LaFave, *supra*, § 1.3(f). We find that under the facts presented in this case, the magistrate's issuance of a search warrant did not sanitize the police misconduct in illegally seizing O'Neal's bag.

7. The affidavit describes the admission as follows:

As Sgt. Violette walked away with the bag, your affiant stated to O'Neal, "There is dope in your bag, John, isn't there?" O'Neal then stated, "Yes." His shoulders slumped. I then asked O'Neal if it was cocaine, to which he stated, "Yeah, man." At this point your affiant placed O'Neal under arrest.

8. "As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief." *United States v. Simmons*, 964 F.2d 763, 777 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992). Rule 28 of the Federal Rules of Appellate Procedure requires the inclusion of a statement of issues in the appellate brief, and issues not raised are considered waived. *See id*. O'Neal contends that he was not required to raise the issue because, under the terms of his conditional guilty plea agreement with the government, if the seizure were declared illegal on appeal, he could withdraw his plea. Our review

The admissibility of the drug evidence seized from O'Neal's bag depends upon the validity of the search warrant that led to its discovery. The search warrant's validity, in turn, depends not solely upon the seizure of the bag, but upon all the bases for the magistrate's finding of probable cause. *See, e.g., United States v. Packer*, 730 F.2d 1151 (8th Cir.1984) (holding that illegal entry and search did not invalidate a subsequent search warrant where information acquired was not necessary to finding of probable cause).

In determining whether probable cause exists, a magistrate must decide whether the information provided in the affidavit accompanying a warrant application presents "sufficient facts to justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Riedesel*, 987 F.2d 1383, 1390 (8th Cir. 1993). Clearly, a voluntary statement admitting to a police officer that one's bag contains drugs is adequate to support a finding of probable cause. Consequently, we hold that based upon O'Neal's statements alone, probable cause did exist for the issuance of the warrant to search O'Neal's bag.[9]

## CONCLUSION

On the basis of a proper finding of probable cause, we affirm the district court's denial of the motion to suppress.

McMILLIAN, Circuit Judge, concurring.

I concur. I write separately only to emphasize that while I concur wholly in the analysis in Part II(A) (holding there was no reasonable, articulable suspicion to justify seizure of bag) and footnote 6 of Part II(B) (refusing to apply good faith exception of *United States v. Leon* ), I concur in the analysis in Part II(B) only because O'Neal did not challenge the legality of his statement about the contents of his bag and therefore waived appellate review of that issue.

BOWMAN, Circuit Judge, concurring.

I agree the evidence falls short of demonstrating that the officers' seizure of O'Neal's bag was supported by an objectively reasonable, articulable suspicion that criminal activity was afoot. I also agree the denial of the suppression motion must be affirmed on the ground that, once O'Neal admitted the bag contained cocaine, probable cause existed for the issuance of the search warrant.

I depart from the opinion of the Court, however, insofar as it suggests in footnote 6 that the denial of the suppression motion could not be sustained under the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Court holds that the warrant to search O'Neal's bag was supported by adequate probable cause, and that the constitutionality of O'Neal's admission, which supports the finding of probable cause, is not before us. Since the search warrant was supported by probable cause, the Court's discussion of the application of *Leon* to the hypothetical case assumed in footnote 6 is an exercise in obiter dicta. The fact is the officers did not search the bag without a warrant or with a warrant unsupported by probable cause. Notwithstanding the government's suggestion that a *Leon* analysis is appropriate here (a direct result of its failure to recognize the actual source of probable cause for the warrant), the Court's finding of probable cause to support the warrant renders the good faith of the executing officers irrelevant. The Court's *Leon* discussion, therefore, is not only unnecessary but also is a gratuitous and totally undeserved attack on the officers who executed the warrant (the same officers who went to the trouble of getting a search warrant when they did not even need one, *see ante* at 244 n. 9), especially when we already

---

of the plea agreement filed in the district court, however, shows that O'Neal reserved "the right to appeal the Court's denial of his motion to suppress evidence seized from a bag carried by the defendant on October 31, 1992." We must therefore consider any issue that is relevant to the suppression of the *evidence*, but not raised, to be waived.

**9.** We deem it noteworthy that once O'Neal admitted the presence of the drugs in the bag, the officers had probable cause to immediately arrest O'Neal, and a search of the bag incident to that arrest could have been made. However, the officers did not execute the search until a judicial officer determined that probable cause to search existed.

have taken them to task for the seizure of the bag. I therefore decline to join that portion of the Court's opinion.