Frederick L. CHERB, Appellant,

v.

The STATE of Texas, Appellee.

No. 43795.

Court of Criminal Appeals of Texas.

Nov. 2, 1971.

Clayton & Clayton by D. Lyman Stubblefield, Amarillo, for appellant.

Tom Curtis, Dist. Atty., Hugh Russell, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

## ON APPELLANT'S MOTION TO REINSTATE APPEAL

ROBERTS, Judge.

On May 19, 1971, we dismissed the appeal in this cause for the reason that no notice of appeal was contained in the record as required by Art. 44.08, Vernon's Ann. C.C.P.

By supplemental transcript it is shown that permission of the trial court to give notice of appeal *after* ten days from the date of sentencing had expired was granted in accordance with Art. 44.08(e), V.A. C.C.P., and that such notice has been given.

Accordingly, the appeal is properly reinstated. Smith v. State, Tex.Cr.App., 424 S.W.2d 228 (1968); Herbort v. State, 422 S.W.2d 456 (Tex.Cr.App., 1967).

The offense is burglary to commit theft. Trial was before a jury which set the punishment at twelve years confinement.

Appellant's four grounds of error are:

(1) Allowing an accomplice to testify because the accomplice was under duress and force.

(2) Allowing the introduction into evidence of two affidavits given by two witnesses.

(3) Allowing the State to impeach its own witness without proper predicate.

(4) Insufficient evidence.

Appellant's accomplice, Larry Brawner, testified that he had pled guilty to the same offense earlier that day. He stated that he was testifying against his will and that doing so would be a violation of his constitutional rights. The court instructed him to testify, notwithstanding his objections.

Brawner testified that he and appellant, along with another person or persons, on December 18, 1969, left the apartment where they and several girls had been staying and broke into a tavern or bar. Brawner stated that entrance to the bar was gained through an air conditioning duct on the roof of the bar, and that appellant went down the duct, tearing his trousers in the process. He testified that he and appellant broke into several of the coin-operated machines in the bar and took some money from them. After the burglary, according to Brawner, the group returned to the apartment and hid the money, which was in a coin bag, in a cabinet above the kitchen sink in the apartment.

Odessa Harrison, one of the girls who was in the apartment with appellant and Brawner, testified that appellant left the apartment with the group on the night in question, then returned and passed out. The group, according to the witness, then left again, returning later with a bag of change which was placed in a kitchen cabinet.

Neva Henderson, another of the girls who was in the apartment, testified that she did not see any of the boys who were in the apartment leave, and that she had not talked to them in regard to a burglary, nor seen them count any money.

Counsel for the State then asked her if she had given a statement to the local police, and she said that she had. He then handed her State's Exhibit No. 1, and asked her to identify it. She said that she had signed it. The prosecutor then stated that the exhibit was an instrument which she had signed on December 24, 1969.

Over appellant's objection that there was no proper predicate, nor proper identifica-

tion of the exhibit, counsel for the State began to read the exhibit,[1] asking after each statement contained therein whether the statement was true, and also, in some instances, whether the witness had made the statement. The witness admitted that all the statements were true, except that she denied that appellant left the apartment with the other boys. She did, however, answer as follows at one point during her testimony:

"Q 'On or about Friday, December 19, 1969, about 2:00 A.M., Luke, Jimmy, Freddie and Larry left the apartment.' Did you make that statement?

"A Yes.

"Q Is it true?

"A Yes.

    *    *    *    *    *    *

"Q 'The boys came back between 3:30 A.M. and 4:00 A.M.' Did you make that statement?

"A Uh-huh. ·

"Q Is it correct?

"A (Witness nods head up and down.)"

Later, she denied having said that the statement was true. She did admit, upon further questioning, that she had told .the district attorney the day before that the entire statement was true, but that she had lied in so telling him, and that it was not true in all respects.

The State then recalled Odessa Harrison. She verified that she saw three men leave the apartment, but that appellant did not leave with them. The State then produced its Exhibit No. 2,[2] which the witness identified as being her statement. She also admitted that she had discussed it previously with the prosecutor, and that on the

day before trial, she had told him that she had signed it and subscribed it, and that it was true.

The prosecutor then went over the affidavit with her, reading various parts of it and asking the witness whether she had made that particular statement and whether that statement was true. The witness answered that she had made each of the statements, and admitted that most were true. She admitted stating that appellant made a statement about breaking into a bar but denied that her statement was true. She did admit making statements that all of the boys left the apartment twice on the night in question, that appellant handed a "First National Bank" bag which contained coins to her, that appellant instructed her to count the money, and that appellant hid the money under a chair when a man came to the door. She further stated that these statements were true.

Later, she said that appellant did not leave, but was unconscious at the time the other boys left the apartment.

The State then offered the affidavit into evidence for the purpose of impeachment and it was received over objection by appellant.

The owner of the bar stated that his bar, Rene's, had been burglarized, and that the air conditioning vents were damaged, i. e., bent inward. He further testified that certain coin-operated machines in the bar had been broken into, and that coins had been taken from the lounge. He also testified that he kept a number of bank bags marked "First National Bank" or "North State Bank," in his bar.

A police officer, who had investigated the burglary, testified that entry was gained through the air conditioning vent on the roof, and that the coin-machines had been pried open.

1. The exhibit was an affidavit which stated, in summary, that the affiant had seen appellant and the other boys in the apartment leave, saying they were going to break into some place, and that she saw

them return with a bag of change, which she saw them count.

2. This exhibit was an affidavit similar to Exhibit No. 1 and which stated essentially the same facts.

Appellant called two witnesses in his behalf.

Appellant contends that the court erred in admitting the testimony of Larry Brawner, the accomplice, for the reason that he was testifying against his will, and that to allow such testimony "would be shocking to the conscience of the court." No authorities are cited in support of this contention.

■ It is well settled that the privilege against self-incrimination is personal to the witness, and cannot be asserted by a party in respect to the witness, e. g., United States v. Ceniceros, 427 F.2d 685 (9th Cir. 1970); Bowman v. United States, 350 F.2d 913 (9th Cir. 1965); Campbell v. State, 172 Tex. Cr.R. 431, 358 S.W.2d 376 (1962). Further, in this case, Brawner had no privilege to claim, as he had already pled guilty to the offense. United States v. Hoffman, 385 F.2d 501 (7th Cir. 1967). The contention is without merit.

Appellant also contends that the court erred in permitting the State to impeach its own witnesses.

This Court has held that a trial court may, in its discretion, permit counsel for the State to ask leading questions of a hostile witness on direct examination. Holbert v. State, 457 S.W.2d 286 (Tex.Cr.App., 1970). Further, this Court has held that a procedure like the procedure followed in the instant case was not error. Wright v. State, 422 S.W.2d 184 (Tex.Cr.App., 1967). In that case, counsel for the State produced a written statement which the State's witness admitted making and signing. The prosecutor then read portions of the statement to the witness and asked if they were true. She admitted that they were. This Court held that there was no improper impeachment by the State of its own witness. Also see Gauntt v. State, 169 Tex.Cr.R. 520, 335 S.W.2d 616, 619 (1960).

■ The weight of authority also supports the proposition that a party may interrogate its own witness concerning prior inconsistent statements, when the party is surprised by the witnesses' unfavorable testimony. It is stated at 58 Am.Jur., Witnesses, § 801:

"The cases are practically in accord in holding that a party who is surprised by unfavorable testimony of his own witness may interrogate such witness as to previous inconsistent statements made by him, * * *. The trial court may exercise a sound discretion in permitting or denying such examination. It may permit the party to put leading questions to his witness on direct examination, or to change the character of the examination from direct examination to cross-examination. The purpose in thus interrogating the witness concerning his previous statements is * * * to probe his conscience and induce him to correct his testimony * * * or to lay a foundation for impeachment by inconsistent statements."

See, e. g., Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 38 L.Ed. 170 (1894); United States v. Allied Stevedoring Corp., 241 F.2d 925, 932 (2nd Cir. 1957); Poliafico v. United States, 237 F.2d 97 (6th Cir. 1956); Curtis v. United States, 67 F.2d 943, 946 (10th Cir. 1933); Di Carlo v. United States, 6 F.2d 364, 368 (2nd Cir. 1925); People v. Quevreaux, 407 Ill. 176, 95 N.E.2d 62 (1950); Baum v. State, 60 Tex.Cr.R. 638, 133 S.W. 271 (1911). Also see Anno. 74 A.L.R. 1042.

In the instant case, there was no showing of surprise on the part of the State prior to the interrogation of Neva Henderson. There was, however, such a showing *after* the interrogation. In addition, there was a discussion at the bench between court and counsel, the content of which is not in the record. Later, however, the court stated that the statement was "admissible for the purpose that it is offered, showing that this is a hostile witness, and that her testimony given today does not coincide with the previous statement." This would indicate that the trial court was aware of the direction of the questioning and was exercising its

discretion in allowing the questioning to proceed as it did.

■ The purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness whom the party knows will testify adversely and then, under the guise of impeachment or cross-examination, present before the jury the testimony which the party would have hoped to elicit from the adverse witness. Young v. United States, 97 F.2d 200, 205 (5th Cir. 1938).

■ While the proper procedure is to show surprise *before* the impeachment or cross-examination, nevertheless, in the instant case, the purpose of the rule was served. The State showed by the witness' own testimony, that she had told the district attorney otherwise, and that she had changed her mind as to the truth of her former statement the night before. There was nothing to indictae that the State expected the witness to testify adversely. Therefore, any error in permitting the interrogation to proceed as it did was harmless.

The interrogation of Odessa Harrison was not error. Surprise was shown before the interrogation.

Neva Henderson admitted making the statement and admitted that it was true. Odessa Harrison likewise admitted the truth of her statement except for the part which indicated that appellant had left the apartment with the other boys and that he had made incriminating statements. *She did, however, admit making the entire statement.*

The rule followed by this Court and other Texas courts is that if the witness unqualifiedly admits making the inconsistent statement, then further proof of the statement is error. Kepley v. State, 167 Tex. Cr.R. 233, 320 S.W.2d 143 (1959); Sloan v. State, 129 Tex.Cr.R. 131, 84 S.W.2d 484 (1935); Brooks v. State, 118 Tex.Cr.R. 205,

40 S.W.2d 814 (1930); Smith v. Red Arrow Freight Lines, Inc., 460 S.W.2d 257 (Tex. Civ.App.-San Antonio, 1970, writ refused, n. r. e.); Morgan v. Luna, 337 S.W.2d 139 (Tex.Civ.App.-El Paso, 1960, no writ history).

■ We feel that the admission of the affidavits was error. However, the error was not of such nature as to require reversal. The content of the affidavits was essentially the same as the testimony of Larry Brawner. The admission of improper evidence does not constitute reversible error when the same facts are properly before the jury in earlier testimony. Lassere v. State, 458 S.W.2d 81 (Tex.Cr.App., 1970), cert. denied, 401 U.S. 920, 91 S.Ct. 906, 27 L.Ed.2d 822; Simon v. State, 406 S.W.2d 460 (Tex.Cr.App., 1966), cert. denied, 386 U.S. 968, 87 S.Ct. 1054, 18 L.Ed.2d 123.

Appellant also contends that the State failed to show surprise at Odessa Harrison's testimony and therefore her statement was improperly admitted. While either party is permitted, by statute [3] to impeach its own witness, nevertheless, this Court has held that the party must show surprise as a predicate for so doing. Perkins v. State, 433 S.W.2d 712 (Tex.Cr.App., 1968); Wall v. State, 417 S.W.2d 59 (Tex. Cr.App., 1967); Solomon v. State, 162 Tex. Cr.R. 374, 285 S.W.2d 755 (1956).

In this case, the witness admitted that she had told the prosecutor on the day before the trial that her written statement was true. Thus, surprise was shown. The statement, if otherwise admissible, would not have been inadmissible for failure to show surprise.

Appellant further contends that the evidence is insufficient to support the conviction for the reason that the State's case is based, in chief, upon the testimony of an accomplice, and such testimony, according to appellant, is not sufficiently corroborated.

3. Art. 38.28, V.A.C.C.P.

Article 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

█ The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient, otherwise it is not. Odom v. State, 438 S.W.2d 912 (Tex.Cr.App., 1969); Edwards v. State, 427 S.W.2d 629 (Tex.Cr.App., 1968); Dalrymple v. State, 366 S.W.2d 576 (Tex.Cr.App., 1963); Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319 (1960); Chavira v. State, 167 Tex.Cr.R. 197, 319 S.W.2d 115; Story v. State, 153 Tex.Cr.R. 541, 221 S.W.2d 917 (1949).

Applying this test to the instant case, we first eliminate the testimony of Larry Brawner, the accomplice. We are left with the testimony of the two girls who were in the apartment, the testimony of the bar owner, and the testimony of the police officer. In order to support the conviction, their testimony, standing alone, must tend to connect appellant with the crime.

The police officer testified that entry was made through the air conditioning duct, and that the machines had been pried open.

The bar owner testified that his tavern had been burglarized, that his machines had been opened, that coins had been taken from them, and that he kept coin bags marked either "First National Bank" or "North State Bank," in the bar.

The testimony of these two men, considered without reference to other testimony, seems only to establish that a crime had been committed. Nothing in their testimony tends to connect appellant with the crime. If a connection is to be found, then it must be found, if at all, in the testimony of the two girls.

█ The affidavits, whether *properly* admitted or not, were admitted only for impeachment purposes, are without probative value, and cannot be considered in determining the sufficiency of the evidence to support the conviction. Wall v. State, 417 S.W.2d 59 (Tex.Cr.App., 1967); Shivers v. State, 374 S.W.2d 672 (Tex.Cr.App., 1964); Hall v. State, 164 Tex.Cr.R. 142, 297 S.W.2d 685 (1957); Lawhon v. State, 284 S.W.2d 730 (Tex.Cr.App., 1955); Wells v. State, 154 Tex.Cr.R. 336, 227 S.W.2d 210 (1950); Carroll v. State, 143 Tex.Cr.R. 269, 158 S.W.2d 532 (1942).

█ The affidavits not being considered, there remains only the testimony of the two girls and their affirmative answers to the prosecutor's questions regarding the truth of certain statements. In considering this testimony, this Court will consider only those statements which the girls admitted were true. Also, even among the statements admitted as true, this Court will not consider those which were hearsay. This type of hearsay is without probative value and cannot be considered in determining the sufficiency of the evidence even if admitted without objection. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628 (1941); Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 538 (1912); Pearson v. Stevens, 446 S.W.2d 381 (Tex.Civ.App.-Houston 1969, no writ); Wood v. Self, 362 S.W.2d 188 (Tex.Civ.App.-Dallas 1962, no writ); Boucher v. City

Paint & Supply, Inc., 398 S.W.2d 352 (Tex. Civ.App.-Tyler 1966, no writ).

The testimony which may be considered showed that appellant left the apartment early in the morning with the other boys, that he returned with them and later handed a "First National Bank" bag to one of the girls and told her to count it, that it contained coins, and that later appellant hid the money when a man came to the door.

■ The mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the testimony of an accomplice. Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311 (1958); Roberd v. State, 161 Tex.Cr.R. 188, 276 S.W.2d 270 (1955). However, the presence of the accused with the accomplice, when coupled with other circumstances, may be sufficient to corroborate the testimony of the accomplice.

It is stated in 23 C.J.S. Criminal Law § 812(4) g, p. 119:

"In certain instances, association with the admitted criminals is corroborative of the testimony of an accomplice. So, the fact that at or about the time of the commission of the offense with which accused is charged he and the accomplice were together, in apparent intimacy, in the place where the crime was committed, or in the neighborhood thereof, may, in conjunction with other facts and circumstances, sufficiently connect accused with the commission of the crime to furnish the necessary corroboration of the accomplice, especially * * * where accused and his accomplice were not only together, but had the fruits of the crime in their possession."

A similar passage from 23 C.J.S. Criminal Law § 812(4) f, p. 118 stated that the presence of the accused at or near the scene of the crime, while not sufficient in itself, when coupled with suspicious circumstances, such as the unreasonableness of the hour, would be sufficient corroboration, was cited with approval by the court in Edwards v. State, 427 S.W.2d 629, 633 (Tex.Cr.App., 1968).

By analogy, the same reasoning can be applied to a situation where the accused, while not placed at the scene of the crime, is shown to be in the company of the accomplice, before and after the time of commission of the crime, and additional circumstances which would tend to implicate the defendant are shown.

■ In the instant case, appellant was shown to have left the apartment with the accomplice on the night in question, and to have returned with him, in possession of a bag of coins. Further, appellant was shown to have been counting the coins in the apartment and to have hidden them when a man came to the door. Taken as a whole, we feel that these circumstances are sufficient, when coupled with the presence of the appellant with the accomplice, to sufficiently corroborate the testimony of the accomplice.

Although the testimony of the non-accomplice witnesses does not indicate that the bag of coins which appellant possessed was the fruit of the crime, nevertheless, the non-accomplice testimony indicates that a large number of coins were taken, that appellant returned to the apartment with coins and in the company of the accomplice, and that appellant hid the coins. Admittedly, this evidence, standing by itself, would not be sufficient to support the conviction.

This Court held in Rogers v. State, 461 S.W.2d 399, 402 (1970):

"The corroborating testimony need not be sufficient in itself to establish the guilt of the accused, for if this were true the testimony of the accomplice would be of no value. The evidence is sufficient if it tends to connect the defendant with the offenses."

We feel this rule is applicable to this case.

This Court also said in Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422, 428 (1927), cited by the court in Edwards v. State, 427 S.W.2d 629, 632 (Tex.Cr.App., 1968):

"The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be 'other evidence tending to connect the defendant with the offense committed.' * * * Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied." (Citations omitted)

The presence of appellant with the accomplice near the time of the offense, the possession of coins, the fact that non-accomplice testimony showed that the coins were taken and the hiding of the coins and the taking of the coins from the kitchen cabinet, although not direct evidence, and insufficient, standing alone, to support the conviction, nevertheless provide the "combined and cumulative weight" sufficient to provide facts *tending* to connect the accused with the commission of the crime.

For this reason, we feel the evidence is sufficient to corroborate the testimony of the accomplice.

No reversible error being shown, the judgment is affirmed.

ONION, P. J., concurs.