COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-455-CR
  
  
MICHAEL 
WAYNE POWELL                                                     APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        A 
jury convicted Appellant Michael Wayne Powell of burglary of a habitation and 
assessed his punishment at twenty eight years’ confinement in the 
Institutional Division of the Texas Department of Criminal Justice as a habitual 
offender.  The trial court sentenced him accordingly.  Appellant 
brings two points on appeal, arguing that the evidence is both legally and 
factually insufficient to support his conviction.  Because we hold that the 
evidence is legally insufficient to support the jury’s verdict, we reverse the 
trial court’s judgment and render a judgment of acquittal.
Background 
Facts
        On 
July 10, 2002, Complainant returned home to find that her house had been broken 
into, her property had been stacked near the open front door, and her 
husband’s wallet was missing.  A vehicle was in Complainant’s 
driveway.  Its back window was broken out. Complainant called the police on 
her cell phone, and while she was on the phone, Appellant approached her, told 
her to “get the fuck off the phone . . . and [he would] tell [her] what the 
hell [was] going on,” and then left in the vehicle.  Complainant recorded 
the license plate number of the vehicle.  The missing wallet was discovered 
at the nearby corner of Austin Street, the street on which Complainant lived, 
and Maddox Street.
        Shortly 
after Complainant called the police, Officer Vyers arrived.  He testified 
that Complainant verbally told him what the license plate number was and that 
she did not give him any paper, or, alternatively, that he did not recall her 
giving him a piece of paper.  He testified that he wrote the number down in 
his notes from her verbal description. He then called in a description of the 
vehicle, including the license plate number, which he read from his notes, and 
the description was broadcast.  Officer Haley found a vehicle matching the 
description, including the license plate number, parked in a bank parking lot on 
Maddox Street.  Within a minute of spotting the vehicle, Officer Haley saw 
Appellant running in its direction.  Officer Haley then arrested Appellant, 
who refused to respond when asked by Officer Haley if the vehicle belonged to 
him.  Officer Haley then returned to Complainant’s residence with 
Appellant, where Complainant identified Appellant as the person who had cursed 
at her while she was on the phone but noted that Appellant was wearing a 
different colored shirt than when he had cursed at her.
        State’s 
witness Maribel Rodriguez testified that she had seen an Anglo male and a 
Hispanic male on the street exchanging the shirts they had been wearing.  
Rodriguez also testified that the tattoos she had observed on the Anglo male 
were in the same place as those on Appellant, although she could not tell 
whether they were the same tattoos.  At trial, she was unable to identify 
Appellant as the man she saw exchanging shirts, explaining that he was quite 
different from the man she had seen.
        Officer 
Haley testified that Appellant had been holding keys at the arrest scene and 
that when another officer tried them in the ignition, they started the 
vehicle.  The police found a letter addressed to Appellant and a pawn shop 
ticket bearing the name “Pete Perez” inside the vehicle.  Pete Perez 
was the brother of Complainant’s sister-in-law.  Before Appellant’s 
trial, Pete Perez pled guilty and was convicted of the same burglary for which 
Appellant was on trial.  No DNA or identifiable fingerprints were found 
inside the house.
Legal 
Sufficiency of the Evidence
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict to determine whether 
any rational trier of fact could have found the essential elements of the crime 
beyond a reasonable doubt.[1]  This standard 
gives full play to the responsibility of the trier of fact to resolve conflicts 
in the testimony, to weigh the evidence, and to draw reasonable inferences from 
basic facts to ultimate facts.[2]  The trier of 
fact is the sole judge of the weight and credibility of the evidence.[3]  Thus, when performing a legal sufficiency review, we 
may not re-evaluate the weight and credibility of the evidence and substitute 
our judgment for that of the fact finder.[4]  We 
must resolve any inconsistencies in the evidence in favor of the verdict.[5]  The standard of review is the same for direct and 
circumstantial evidence cases.[6]
        Mere 
presence at the scene of the offense does not make someone a principal or an 
accomplice.[7]  Some affirmative act or omission 
is required.[8]   On the other hand, a person can 
be an accomplice although not present at the scene of the crime.[9]  But simply knowing about a crime and failing to 
disclose it, or even concealing it, does not make someone an accomplice.[10]
        While 
mere presence at or near the scene of a crime is not alone sufficient to prove 
that a person was a party to the offense, it is a circumstance tending to prove 
guilt, which, combined with other facts, may suffice to show that the accused 
was a participant.[11]  Circumstantial evidence 
alone may be used to prove that one is a party to an offense.[12]  
In determining whether the accused was a party, it is proper to look to events 
occurring before, during, and after the commission of the offense.[13]  In a circumstantial evidence case, it is not 
necessary that every fact point directly and independently to the guilt of the 
accused; rather, it is enough if the conclusion is warranted by the combined and 
cumulative force of all the incriminating circumstances.[14]
        The 
mere presence of the accused in the company of the accomplice shortly before or 
after the time of the offense is not, in itself, sufficient evidence of guilt 
even if it constitutes corroboration of the testimony of the accomplice.[15]  Courts have rejected guilt by association as 
corroborating evidence because if “such testimony [placing the defendant and 
the accomplice together] be corroborative, then accomplices might be held 
corroborated in their claim of the guilt of any person upon whom they might seek 
to fasten a crime, by mere proof that such parties had been seen together.”[16]  Association with the admitted criminal may be 
sufficient corroboration of accomplice testimony, however, if offered in 
conjunction with other facts and circumstances that sufficiently connect the 
accused with the commission of the crime.[17]  
Examples of such corroborating circumstances include subsequent flight, 
possession of the fruits of the crime, and presence at or near the scene of the 
crime at an unreasonable hour.[18]
        There 
is no direct evidence of Appellant’s guilt. The case now before this court is 
a circumstantial evidence case, but again, the standard of review is the same in 
both direct and circumstantial evidence cases.[19]  
Pete Perez was the brother of Complainant’s sister-in-law.  Pete Perez 
pled guilty to the burglary, but the record does not reflect whether he 
implicated Appellant in those proceedings.  Perez did not testify in the 
case before us and consequently provided no inculpating testimony to be 
corroborated.  There was evidence—the letter and the pawn ticket—that 
to some extent connected Perez to Appellant.  Additionally, Rodriguez saw a 
Caucasian man and a Hispanic man exchange shirts, and Complainant said the man 
she identified in the show-up was wearing a different colored shirt than when he 
spoke to her earlier.  There was evidence that Appellant is Caucasian.
        Viewing 
the evidence in the light most favorable to the verdict, we note that a vehicle 
was in Complainant’s driveway when she returned to her house.  It had not 
been there when she left.  When she entered her home, she saw evidence of a 
burglary, but no person was inside the house.  Appellant arrived, offered 
to explain everything to her, and drove the vehicle away.  The police found 
Appellant running toward a vehicle matching the description Complainant gave, 
and his keys fit the ignition.  The vehicle’s back window was broken 
out.  A pawn ticket with Pete Perez’s name on it and a letter addressed 
to Appellant were inside the vehicle.  The only evidence connecting 
Appellant with the burglary was the presence of the automobile at the scene and 
the arrival of Appellant later to drive it away.  No evidence was offered 
concerning ownership of the vehicle.
        While 
Appellant had keys that fit the vehicle’s ignition when the police apprehended 
him, the record does not reflect whether the keys were in Appellant’s pocket, 
in the ignition, on the vehicle seat, or some other place when he got into the 
vehicle to drive it away from the burglary scene, or whether the vehicle had 
been hot-wired.  The record also does not reflect whether there was more 
than one set of keys.  The broken-out back window could indicate that the 
vehicle had been stolen.  Neither Appellant’s fingerprints nor his DNA 
was found inside the house. No stolen items were found in the vehicle or on 
Appellant’s person.  No one saw Appellant at Complainant’s house before 
Complainant saw him walk up to her while she was reporting the burglary.  
Although Complainant wrote down the license plate number of the vehicle she saw 
at her house, no one testified either that the license plate on the vehicle the 
police recovered matched the number Complainant wrote down or that the vehicle 
was registered to Appellant.  Complainant described the man she saw as 
having a shaved head, but Appellant’s head was not shaved.  His hair was 
short, however.
        The 
State must prove each and every element of the offense beyond a reasonable doubt 
under the Fourteenth Amendment Due Process Clause.[20]  
The State was obligated to prove that Appellant, either acting alone or as a 
party, entered Complainant’s house without consent with intent to commit theft 
or that he entered without consent and did commit or attempt to commit theft.[21]  Applying the appropriate standard of review, we 
hold that the evidence, even if entirely believed, is insufficient to support 
the jury’s verdict.  We sustain Appellant’s second point.  Because 
of our disposition of this point, we do not reach Appellant’s first point.[22]
Conclusion
        Having 
held that the evidence is legally insufficient to support Appellant’s guilt, 
we reverse the judgment of the trial court and render a judgment of acquittal.[23]
    
LEE 
ANN DAUPHINOT
JUSTICE
  
  
   
PANEL 
A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.
 
CAYCE, 
C.J. dissents without opinion.
 
PUBLISH
 
DELIVERED: 
March 17, 2005


NOTES
1.  
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross 
v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
2.  
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.
3.  
See Tex. Code Crim. Proc. Ann. 
art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. 
Crim. App. 2000).
4.  
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1131 (2000).
5.  
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
6.  
Burden v. State, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); Kutzner v. 
State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).
7.  
Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).
8.  
Id.
9.  
Id.
10.  
Id.
11.  
Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).
12.  
Wygal v. State, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977).
13.  
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert. 
denied, 476 U.S. 1101 (1986).
14.  
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. 
denied, 511 U.S. 1046 (1994).
15.  
Nelson v. State, 542 S.W.2d 175, 177 (Tex. Crim. App. 1976).
16.  
Weatherred v. State, 100 Tex. Crim. 199, 272 S.W. 471, 472 (1925).
17.  
Cherb v. State, 472 S.W.2d 273, 280 (Tex. Crim. App. 1971).
18.  
Id.; see also Cawley v. State, 166 Tex. Crim. 37, 310 S.W.2d 340, 
342 (1957), cert. denied, 361 U.S. 920 (1959).
19.  
Burden, 55 S.W.3d at 612-13.
20.  
Mullaney v. Wilbur, 421 U.S. 684, 699-700, 95 S. Ct. 1881, 1889-90 
(1975); In re Winship, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 1072-73 
(1970).
21.  
See Tex. Penal Code Ann. 
§§ 7.01, 30.02 (Vernon 2003).
22.  
See Tex. R. App. P. 47.1.
23.  
See Tex. R. App. P. 
43.2(c), 51.2(d); Greene v. Massey, 437 U.S. 19, 24-25, 98 S. Ct. 2151, 
2154-55 (1978); Burks v. United States, 437 U.S. 1, 16-18, 98 S. Ct. 
2141, 2150-51 (1978); Moff v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 
2004).