COURT OF APPEALS

                                      SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-03-455-CR

 

 

MICHAEL WAYNE POWELL                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                               OPINION ON APPELLANT=S 

PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------

Pursuant to rule of appellate procedure 50, we
have reconsidered our previous opinion on Appellant=s
petition for discretionary review.  See
Tex. R. App. P. 50.  We withdraw our judgment and opinion dated
January 11, 2007, and substitute the following.








This case is before this court on remand from the Texas Court of
Criminal Appeals.[1]  A jury convicted Appellant Michael Wayne
Powell of burglary of a habitation and assessed his punishment at twenty-eight
years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice as a habitual offender.  The
trial court sentenced him accordingly. 
Appellant brought two points on appeal, arguing that the evidence was
both legally and factually insufficient to support his conviction.  We held that the evidence was legally
insufficient to support the jury=s
verdict, reversed the trial court=s
judgment, and rendered a judgment of acquittal.[2]  The Texas Court of Criminal Appeals held the
evidence legally sufficient to support Appellant=s
conviction and remanded the cause to this court to consider Appellant=s
remaining point challenging the factual sufficiency of the evidence.[3]  Because we hold that the evidence is
factually sufficient to support Appellant=s
conviction, we affirm the trial court=s
judgment.

 

 








The Facts

On July 10, 2002, the complainant returned home
to find that her house had been broken into, her property had been stacked near
the open front door, and her husband=s wallet
was missing.  A vehicle, a Chevrolet
Blazer, was in her driveway.  Its back
window was broken out.

The complainant testified that when she arrived
home, she heard the screen door to the duplex slam.  She testified that her house was a
duplex,  A[a]nd it
looks like a house from the outside, but it=s got a
middle doorway that leads to a hallway to two separate doors.  That front door was closed.  We usually lock it, but I was gonna be right
back.  I didn=t lock
it.  I just closed it behind me.  And the screen door, you know, it closes
automatically.@[4]








She entered through the screen door and saw that
the door to the other half of the duplex was closed but the door to her side of
the duplex was Acracked open.@[5]  She saw her television sitting by the front
door, so she ran back outside, and then, as she testified, Astalled
for a minute.  Because I looked around to
see if any neighbors were home.  My
neighbor that I do talk to, she=s got
dogs, so I couldn=t jump in her yard, you know,
and use the phone.@[6]  She did not see any vehicles at any of the
other neighbors= homes, so she ran to the
business across the street from the front of her house.[7]  She asked to use the telephone, and the woman
who worked at the shop called the police.

A customer was in the shop, and the complainant
asked to use his cell phone to call the police because the other woman had
given the police the wrong address.  The
customer let the complainant borrow the cell phone, and she called the police.  While the complainant was on the cell phone, she
walked back across the street toward her house. 
She watched her house to see if anyone came out, but no one did.[8]  The complainant also went to her neighbor=s house
because the neighbor had come outside. 
The complainant asked the neighbor if she had seen anything and if she
knew whom the vehicle belonged to, but the neighbor knew nothing.[9]  The complainant stood and talked to her
neighbor about Awhat was going on@ while
she remained on the cell phone with the police.








At some point while the complainant was talking
to her neighbor, a man, later identified as Appellant, came walking up the
street toward the complainant and her neighbor. 
The complainant testified, AThere
was a gentleman walking towards me, coming from northbound on Austin.  And he was a white male.  And I figured it was just somebody walking
down the street.  Because I live at the
corner of Austin and Allen, and there=s always
all kinds of people walking.@[10]  She continued, AI
thought he was going to walk by, but no. 
He approaches me and comes into my yard and tells me to get the C he told
me[,] >Get the
fuck off of the phone,= you know, >and I=ll tell
you what the hell is going on.=@[11]  He got into the vehicle, started it, and
drove off Agoing south on Austin.@[12]

The complainant recorded the license plate number
of the vehicle.  Shortly after the
complainant called the police, Officer Billy Vyers arrived.  He testified that the complainant verbally
told him what the license plate number was and that she did not give him any
paper, or, alternatively, that he did not recall her giving him a piece of
paper.  He testified that he wrote the
number down in his notes from her verbal description.  He then called in a description of the
vehicle, including the license plate number, which he read from his notes, and
the description was broadcast.








Officer Michael Haley found a vehicle matching
the description, including the license plate number, parked in a bank parking
lot on Maddox Street.  Within a minute of
spotting the vehicle, Officer Haley saw Appellant running in its
direction.  Officer Haley then arrested
Appellant, who did not respond when 
Officer Haley asked if the vehicle belonged to him.[13]  Officer Haley testified that he did not
perform a computer search to determine ownership of the vehicle. He also
testified that Appellant had been holding keys. 
When another officer tried them in the ignition, they started the
vehicle.  Inside the vehicle, the police
found a letter addressed to Appellant and a pawn shop ticket bearing the name APete
Perez@ and the
date July 8, 2002.  The complainant=s
sister-in-law=s brother was named Pete Perez,
and the complainant identified a photograph of her sister-in-law=s
brother from a photo spread.

Officer Haley then returned to the complainant=s
residence with Appellant, where the complainant identified Appellant as the
person who had cursed at her while she was on the phone but also noted that he
was wearing a different colored shirt than when he had cursed at her.








State=s
witness Maribel Rodriguez testified that she had seen an Anglo male and a
Hispanic male on the street exchanging the shirts they had been wearing.  Rodriguez also testified that the tattoos she
had observed on the Anglo male were in the same place as two of those on
Appellant, although she could not tell whether they were the same tattoos.  At trial, she was unable to identify
Appellant as the man she saw exchanging shirts, explaining that he was quite
different from the man she had seen.

No DNA or identifiable fingerprints were found
inside the house.  The complainant=s
husband=s missing
wallet was discovered just south of the west corner of Austin Street, the
street on which the complainant lived, and West Maddox Street.

Before Appellant=s trial,
Pete Perez pled guilty to committing burglary on July 10, 2002.  In Appellant=s case,
the jury was charged on the law of parties.

Standard of Review for
Factual Sufficiency of the Evidence








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.[14]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the fact-finder=s
determination is manifestly unjust.[15]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[16]








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@[17]  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence.[18]  We may not simply substitute our judgment for
the fact-finder=s.[19]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[20]  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@[21]

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.[22]

Analysis

Guilt as a Party








Initially, we note that the opinion of the Texas
Court of Criminal Appeals remanding this case to our court states, AThe
court of appeals appears to have incorporated an additional requirementCthat
appellant is required to actually enter the complainant=s house
in order to be found guilty of burglary of a habitation under the law of
parties.@[23]  Apparently our opinion was not artfully
drafted, for we all know that while someone must actually enter a home
for a burglary of a habitation to occur, a person guilty of burglary as a party
must only, Aacting with intent to promote or
assist the commission of the offense, . . . solicit[], encourage[], direct[],
aid[], or attempt[] to aid the other person to commit@ the
burglary.[24]

Circumstantial evidence alone may be used to
prove that one is a party to an offense.[25]  In determining whether the accused was a
party, it is proper to look to events occurring before, during, and after the
commission of the offense.[26]  In a circumstantial evidence case, such as
this one, it is not necessary that every fact point directly and independently
to the guilt of the accused; rather, it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances.[27]








In our prior review of the evidence, we noted not
only the evidence that existed, but also the evidence that did not exist.  Because there was no evidence that Appellant
personally entered the complainant=s home,
we were and are required to examine the record to determine whether there is
evidence that Appellant is nevertheless guilty as a party and review such
evidence for its sufficiency.[28]

Mere Presence

As we stated in our original opinion, mere
presence at the scene of the offense does not make someone a principal or an
accomplice.[29]  Some affirmative act or omission is required.[30]  But mere presence is a circumstance tending
to prove guilt, which, combined with other facts, may suffice to show that the
accused was a participant.[31]  On the other hand, a person can be an
accomplice even if he was never present at the scene of the crime.[32]  However, simply knowing about a crime and
failing to disclose it, or even concealing it, does not make someone a party to
the crime.[33]








The mere presence of the accused in the company
of an accomplice shortly before or after the time of the offense is not, in
itself, sufficient evidence of guilt even if it constitutes corroboration of
the testimony of the accomplice.[34]  Courts have rejected guilt by association as
corroborating evidence because if Asuch
testimony [placing the defendant and the accomplice together] be corroborative,
then accomplices might be held corroborated in their claim of the guilt of any
person upon whom they might seek to fasten a crime, by mere proof that such
parties had been seen together.@[35]  Association with the admitted criminal may be
sufficient corroboration of accomplice testimony, however, if offered in
conjunction with other facts and circumstances that sufficiently connect the
accused with the commission of the crime.[36]  Examples of such corroborating circumstances
include subsequent flight, possession of the fruits of the crime, and presence
at or near the scene of the crime at an unreasonable hour.[37]  In this case, the record contains no
accomplice testimony.

Application of the Law
to the Facts








There is no direct evidence of Appellant=s guilt,
either as a principal or as a party.  The
brother of the complainant=s
sister-in-law was named Pete Perez.  A
Pete Perez pled guilty to a burglary committed on July 10, 2002, but the record
does not reflect whether he implicated Appellant in those proceedings. No one
named Pete Perez testified in the case before us, and consequently no one named
Pete Perez provided any inculpating testimony to be corroborated.  The letter addressed to Appellant and the
pawn ticketCcontaining the name Pete Perez,
dated two days before the burglary, and found in the same vehicleCto some
extent connected someone named Pete Perez to Appellant.

Additionally, Rodriguez saw a Caucasian man and a
Hispanic man exchange shirts. The record reflects that she viewed the two men
from across Hemphill Street, a four-lane major thoroughfare,[38]
and also reflects her following testimony:

A:  . . . . 
One was a white guy and the other one was looking Hispanic. 

 

Q:  Okay.
Do you remember what the white guy was wearing?

A:  Yeah. 
Tennis shoes, denim pants and a shirt, color blue.

Q:  With
[sic] these young men or old men?

A:  Young
people.

. . . . 








A:  I saw that the white man was with a big
tattoo here (Pointing).  I don=t know it was a name or
was letters or what.

 

Q:  Did he have tattoos anywhere else other than
on B other than on his chest?

 

A:  Yes. 
Another one here (indicating).

 

Q:  On his right arm?

 

A:  Yes.

 

Q:  And were you showed [sic] some photos by the
police?

 

A:  No.

Q:  Do you recognize anybody here in court who
you saw that day?

 

A:  I=m going
to lie to you if I say yes.

Q:  Okay. 
So you do not recognize anybody; is that correct?

 

A: 
No.  Because at that time the
white guy was skinny, the hair was like brownish.  The person I see today is different, looking
different.

Rodriguez testified that she saw no Chevrolet Blazer and that both men
were walking.[39]








When asked specifically about the tattoo on the
man=s chest,
she described it as Aa little above the belly.@[40]  Later, she described it as a little above the
umbilicus.  The photograph admitted as
State=s
Exhibit 7 shows Appellant with a tattoo extending from his right elbow to the
top of his shoulder, across the clavicle from shoulder to shoulder, across the
fullest part of the abdomen beginning just above the navel, on the left bicep,
and the inside of the left forearm.  She
testified, 

Q:  Is it possible B from looking at those
photos [of Appellant], is it possible that those are not the same tattoos that
you saw that day?

 

A:  I just saw him two.

 

Q:  You just saw two tattoos?

 

A:  At that time, yes.

 

. . .
.

 

Q:  Now, you=ve looked at those photographs, and those tattoos
appear to be in similar locations, is that correct?

 

A:  Yes.

 

. . .
.

 

Q:  I cannot say that they were the same because
they were in front of me, but they were in the same place.[41]

 








The complainant said that the man she identified in the show-up was
wearing a different colored shirt than when he spoke to her earlier.  There was evidence that Appellant is
Caucasian.

Because a reviewing court must consider only the
evidence that was before the trier of fact,[42]
we must confine our review to the record that was actually before the jury,
whether properly or improperly admitted.[43]  We do not consider the evidence that was not
before the jury, such as evidence admitted only in pretrial hearings or
hearings outside the presence of the jury that was not later admitted for the
jury=s
consideration. 








Viewing the evidence before the jury in a neutral
light, we note that a vehicle was in the complainant=s
driveway when she returned to her house. 
It had not been there when she left. 
When she entered her home, she saw evidence of a burglary, but no person
was inside the house.  Appellant later
arrived on the sidewalk outside the home, offered to explain everything to her,
and drove the vehicle away.  The police
found Appellant running toward a vehicle matching the description the
complainant gave, and the keys he carried fit the ignition.  The vehicle=s back
window was broken out.  A pawn ticket
with Pete Perez=s name on it and a letter
addressed to Appellant were inside the vehicle. 
The only evidence connecting Appellant with the burglary was the
presence of the automobile at the scene and the arrival of Appellant later to
drive it away.  Although his statement to
the complainant may have indicated knowledge that something was amiss, we do
not know if his statement referred to the automobile in her driveway or the
fact that her home had been entered. 
There is no indication that Appellant knew of the burglary before it
occurred or even while it was occurring.

The only direct evidence offered concerning the
ownership of the Blazer was the officers=
testimony showing that they had no information concerning its ownership:

A.  At that point . . . I asked him, while
pointing to the suspect vehicle, was that his vehicle.

 

. . . . 

 

Q.  Okay. 
And what did he respond C how did he respond?

 

A.  He did not respond.[44]








. . .
.

 

Q.  Did you ever or did any officer that you=re aware of do a
registration or VIN number check on the vehicle to see who it was registered
to?

 

A.  When you run the license plate through our
computer, it=ll show you the VIN
number and it=ll show you who the last
registered owner was.

 

Q.  Uh-huh.

 

A.  Is what it=ll show you on the computer.  We routinely, once we get that information
from the computer screen, return to the vehicle to check to see if it is indeed
the same VIN number.  What it=ll show us is who the
last registered owner is.

 

Q.  Okay. 
And you performed that check on this vehicle?

 

A.  I don=t think I did perform that check.[45]

 

Nowhere does anyone testify that Appellant said the Blazer was
his.  Nowhere does anyone testify that
Appellant was its registered owner.








While Appellant had keys that fit the vehicle=s
ignition when the police apprehended him, the record does not reflect whether
the keys were in Appellant=s
pocket, in the ignition, on the vehicle seat, or some other place  when he got into the vehicle to drive it away
from the burglary scene, or whether the vehicle had been hot-wired.  The fact that the back window of the Blazer
was broken out suggests that the vehicle could have been stolen or used without
the owner=s consent.  The record also does not reflect whether more
than one set of keys existed.  Although
the complainant wrote down the license plate number of the vehicle she saw at
her house, no one testified that the license plate on the vehicle the police
recovered matched the number that the complainant wrote down.

Neither Appellant=s
fingerprints nor his DNA was found inside the house.  No stolen items were found in the vehicle or
on Appellant=s person.  No one saw Appellant at the complainant=s house
before she saw him walk up to her while she was reporting the burglary.  The complainant described the man she saw as
having a shaved head, but Appellant=s head
was not shaved.  His hair was short,
however.








The State must prove each and every element of
the offense beyond a reasonable doubt under the Fourteenth Amendment Due
Process Clause.[46]  The State was therefore obligated to prove
beyond a reasonable doubt that Appellant personally entered the complainant=s house
without consent with intent to commit theft, that he personally entered without
consent and did commit or attempt to commit theft,[47]
or that another person entered the habitation with intent to
commit theft or did commit or attempt to commit theft, and Appellant, acting
with intent to promote or assist the commission of the offense, solicited, encouraged,
directed, aided, or attempted to aid the other person to commit the offense of
burglary of a habitation.[48]  There must be some evidence that Appellant,
acting with intent to promote or assist the commission of the offense,
solicited, encouraged, directed, aided, or attempted to aid the other person to
commit the offense of burglary of a habitation. 
There is none.  We are unable to
determine in which of these manners Appellant acted as a party to the offense
of burglary of a habitation.

The Court of Criminal Appeals has already
determined that the evidence is legally sufficient to support Appellant=s
conviction.  Thus, our deferential review
of the evidence as mandated by Watson requires us to assume there is
evidence to support each element of the burglary offense.








As we stated above, the Court of Criminal Appeals
instructs us that there are two prongs to a factual sufficiency review.  When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.[49]  We then ask under the first prong of the test
whether the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or, under the second
prong, whether conflicting evidence so greatly outweighs the evidence
supporting the conviction that the fact-finder=s
determination is manifestly unjust.[50]  To reverse under the second prong, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[51]

The test for factual sufficiency under the second
prong announced by the Texas Court of Criminal Appeals appears to assume the
existence of conflicting evidence, that is, evidence supporting a guilty
verdict and evidence supporting a not-guilty verdict.[52]  We reach this conclusion because the Watson
court explained, 








We have always held that
an appellate court must first be able to say, with some objective basis in the
record, that the great weight and preponderance of the (albeit legally
sufficient) evidence contradicts the jury's verdict before it is justified in
exercising its appellate fact jurisdiction to order a new trial.  We have never, at least until Zuniga,
interpreted the factual review jurisdiction of criminal appellate courts to
include the ability to overturn a jury verdict and remand for a new trial when
the greater weight and preponderance of the evidence actually favors conviction![53]

 

A factual sufficiency review under either prong
of the test assumes some evidence in support of each element of the
offense.  As is his right, Appellant
offered no evidence at trial.  Because
Appellant did not contradict the evidence that the State offered before the
jury, we do not employ the second prong of the factual sufficiency review.

In conducting a factual sufficiency review that
results in remand, an appellate judge Acannot
conclude that a conviction is >clearly
wrong= or >manifestly
unjust= simply
because, on the quantum of evidence admitted, he would have voted to
acquit had he been on the jury.@[54]  Reversal is warranted only if an appellate
judge can conclude, Awith some objective basis
in the record,@ that the evidence is factually
insufficient.[55]  In other words, the judge must be able to say
that no objective person could have convicted on the evidence presented.








We originally held the evidence legally
insufficient to support Appellant=s
conviction.  That is, we held that no
rational trier of fact could have found the essential elements of the offense
of burglary, either as a party or as a principal, beyond a reasonable doubt,
viewing the evidence in a light favorable to the verdict.  But the Court of Criminal Appeals held the
evidence legally sufficient.  Affording
appropriate deference to the Court of Criminal Appeals=s
determination, we are therefore compelled to hold that the evidence, viewed
objectively and in a neutral light, is factually sufficient to support the jury=s
verdict.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

DELIVERED:  March 8, 2007











[1]Powell v. State, 194 S.W.3d 503 (Tex. Crim. App.
2006).





[2]Powell v. State, 161 S.W.3d 212, 217 (Tex. App.CFort Worth 2005), rev=d, 194 S.W.3d 503 (Tex. Crim. App. 2006).





[3]Powell, 194 S.W.3d at 508.





[4]IV R.R. at 93.





[5]Id. at 98.





[6]Id.





[7]Id. at 99.





[8]Id. at 100.





[9]Id.





[10]Id.





[11]Id. at 101.





[12]Id. at 103.





[13]Id. at 62.





[14]Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).





[15]Watson, 204 S.W.3d at 414-15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).





[16]Watson, 204 S.W.3d at 417.





[17]Id.





[18]Id.





[19]Johnson, 23 S.W.3d at 12; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[20]Johnson, 23 S.W.3d at 8.





[21]Id. at 9.





[22]Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).





[23]Powell, 194 S.W.3d at 507.





[24]Tex. Penal
Code Ann. ' 7.02(a)(2) (Vernon 2003).





[25]Wygal v. State, 555 S.W.2d 465, 469 (Tex. Crim.
App. 1977).





[26]Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985), cert. denied, 476 U.S. 1101 (1986).





[27]Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim.
App. 1993), cert. denied, 511 U.S. 1046 (1994).





[28]Tex. Penal
Code Ann.' 30.02(a)(1) (Vernon 2003)
(requiring entry as an element of burglary of a habitation).





[29]Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim.
App. 1998).





[30]Id.





[31]Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim.
App. 1987).





[32]Id.





[33]Id.





[34]Nelson v. State, 542 S.W.2d 175, 177 (Tex. Crim.
App. 1976).





[35]Weatherred v. State, 100 Tex. Crim. 199, 272 S.W. 471,
472 (1925). 





[36]Cherb v. State, 472 S.W.2d 273, 280 (Tex. Crim.
App. 1971).





[37]Id.; see also Cawley v. State,
166 Tex. Crim. 37, 310 S.W.2d 340, 342 (1957), cert. denied, 361 U.S.
920 (1959).





[38]IV R.R. at 172.





[39]Id. at 134-40.





[40]Id. at 139-40.





[41]Id. at 172.





[42]See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim.
App. 1997) (AThe appellate court reviews the
evidence weighed by the jury . . . .@).





[43]Moff v. State, 131 S.W.3d 485, 489-90 (Tex.
Crim. App. 2004) (A[A]n appellate court must consider
all evidence actually admitted at trial in its sufficiency review and give it
whatever weight and probative value it could rationally convey to a jury.  Thus, even if the trial court erred in
admitting the . . . testimony . . . , the reviewing court must consider that
improperly‑admitted hearsay.@).





[44]IV R.R. at 61-62.





[45]Id. at 84.





[46]Mullaney v. Wilbur, 421 U.S. 684, 699‑700, 95
S. Ct. 1881, 1889‑90  (1975); In
re Winship, 397 U.S. 358, 363‑64, 90 S. Ct. 1068, 1072‑73
(1970).





[47]See Tex.
Penal Code Ann. ' 30.02.





[48]See id. '' 7.01, 30.02.





[49]Watson, 204 S.W.3d at 414; Drichas,
175 S.W.3d at 799.





[50]Watson, 204 S.W.3d at 414-15,
417; Johnson, 23 S.W.3d at 11.





[51]Watson, 204 S.W.3d at 417.





[52]See id.





[53]Id.





[54]Id. (emphasis added).





[55]Id. (emphasis added).